## DEERING & a. *v.* FLANDERS.

A *secret* partnership is where the existence of certain persons as partners is not avowed or made known to the public by any of the partners.

Where all the partners are publicly made known, whether it be by one or all the partners, it is no longer a *secret* partnership, for this is generally used in contradistinction to notorious and open partnership. And it makes no difference in this particular, whether the business of the firm be carried on in the name of one person only, or of him and company.

Where business is thus transacted by A & B under the firm of A & Co., B cannot be considered as a dormant partner; and if he retires from the firm, he is bound to give notice of his retirement, or else he will remain liable upon contracts subsequently made in the name of the firm.

As to the public, such notice need not be actual; it may be constructive and may be implied from circumstances; but a person accustomed to deal with the firm will hold a retiring partner, for debts subsequently contracted in the name of the firm, unless such person had actual knowledge of the retirement, or was put upon inquiry.

As to the debtors of a firm composed of several persons, doing business under the style of A, B & Co. the firm is to all practical intent the same after the retirement of one of the partners: and such change in the constitution of a firm will not excuse a person retiring from a copartnership accustomed to deal with the firm known as A, B & Co., from giving notice to that firm, of such retirement in order to avoid subsequent liability.

ASSUMPSIT, for goods sold. The action was brought by Deering, Milliken & Co. against Charles Fletcher and Mrs. Laurana Flanders, partners as Charles Fletcher & Co.

Fletcher was defaulted, and the suit was contested by Mrs. Flanders. The goods were sold July 9, 1867. The defendant's firm was formed in April, 1867, and dissolved in May, 1867, Fletcher

then buying the interest of Mrs. Flanders, and continuing in the same business at the same place. The firm of Deering, Milliken & Co. consisted of six persons until July 1, 1867, when Locke, one of the partners, withdrew, and the others continued in the same business, at the same place, and under the same name. It does not appear that the defendant was aware of the change. The defendant's firm had bought goods of Deering, Milliken & Co.

Mrs. Flanders' connection with the firm of Fletcher & Co. was known to the plaintiffs and to the public, and it did not appear that any public notice was given of her retirement from the firm, nor that the plaintiffs had knowledge thereof.

Mrs. Flanders contended that, as matter of law, the withdrawal of Locke from the firm of Deering, Milliken & Co., on the 1st day of July, 1867, rendered it unnecessary in this case that Deering, Milliken & Co. should have had notice of the dissolution of the defendant's firm; on the ground that the defendant's firm had not bought goods of the firm of Deering, Milliken & Co. as constituted after said 1st day of July. The court overruled the objection, and Mrs. Flanders excepted.

Some objections not herein stated, being waived, by an arrangement between counsel, the only question of fact submitted to the jury was, whether on the 9th day of July, 1867, Deering, Milliken & Co. had notice of the dissolution of defendant's firm.

On that question the jury found for the plaintiffs, and thereupon a general verdict was taken for the plaintiffs, which Mrs. Flanders moved to set aside.

*Barker*, with whom were *Shurtleff* and *George A. Bingham*, for the defendant.

All the partners, so far as partnership matters are concerned, constitute in law, but one person, known by the partnership name. When Locke retired July 1st, 1867, the firm of Deering Milliken & Co. was dissolved. The new firm that was afterwards created, was a different, distinct and separate person, as much so, as a father and son who bear the same name. This latter firm dealt with Charles Fletcher July 9th, 1867, but had never had any dealings with Charles Fletcher & Co.. At the time the goods were sold, Charles Fletcher & Co. ceased to exist, and were not in existence when the new firm of Deering, Milliken & Co. was created, and of their existence, the new firm of Deering, Milliken & Co. never had any knowledge, and consequently were not entitled to notice of their dissolution.

Notice of dissolution of a partnership must be brought home to all persons who have had dealings with the firm, or they may treat the partnership as still subsisting. Notice in the Gazette is not sufficient. *Zollar* v. *Janvrin*, 47 N. H. 324.

But persons who have had no dealings with the firm, and no knowledge of its existence, are not entitled to this notice. If they were, it would be necessary to personally notify every individual in

the community, which would be simply impossible. Chitty on Contracts p. 259 and notes.

*Dudley & Parsons*, with whom was *Aldrich*, for the plaintiffs.

Locke retired from the firm of D., M. & Co., July 1st, 1867, and the others continued in the same business, on the same plan, and under the same name. It does not appear that the defendant was aware of the change.

Locke, then, as far as C. F. & Co. were concerned, was a dormant partner and was not obliged to give any notice or take any steps to withdraw from any business relation which never existed. Parsons on Partnership 415, and cases cited in note *h.*

It was necessary that the firm of C. F. & Co. should know that Locke was a member of the firm of D., M. & Co. to entitle them to notice of Locke's withdrawal. *Carter* v. *Whally, et al.* 1 B. & Ad. 11 ; *Benton* v. *Chamberlin, et al.* 25 Vt. 711.

If, then, the firm of C. F. & Co. was ignorant of the connection of Locke with the firm of D., M. & Co., and of his withdrawal, and consequently were not entitled to any notice of his withdrawal, the firm of C. F. & Co. could not be excused from giving notice to D., M. & Co. for some reason discovered by them afterwards. *Grosvenor* v. *Lloyd*, 1 Met. 19.

Again, to entitle C. F. & Co. to take advantage of the withdrawal of Locke, a knowledge on their part of said Locke's previous connection with the firm of D., M. & Co. *must be clearly shown. Carter* v. *Whally*, 1 B. & Ad. 11 ; *Edwards* v. *M. Falls*, 5 La. Ann. 167.

C. F. & Co. not knowing of this connection and withdrawal of Locke, left the firm of D., M. & Co. exactly the same, as far as C. F. & Co. were concerned, as though there had been no change.

FOSTER, J. The principal question is whether, under all the circumstances, Mrs. Flanders, in order to protect herself from liability for the price of the goods in question, was required to notify the plaintiffs of her retirement from the firm with which she had been connected.

In the firm of C. Fletcher & Co., Mrs. Flanders was not a *nominal*, a *dormant* nor a *secret* partner, but she was an ostensible partner. Collyer on Partnership § 4. "I·understand," (said Mr. Justice Story,) " the common meaning of *secret* partnership to be a partnership where the existence of certain persons as partners is not avowed or made known to the public by any of the partners. Where all the partners are publicly made known, whether it be by one or all the partners, it is no longer a *secret* partnership, for this is generally used in contradistinction to *notorious* and *open* partnership. And it makes no difference in this particular, whether the business of the firm be carried on in the *name* of one person only, or of him and company." *United States Bank* v. *Binney*, 5 Mason 126.

Where business is thus transacted by A & B under the firm of A & Co., B cannot be considered as a dormant partner; and if he retires from the firm, he is bound to give notice of his retiring or he will remain liable for the contracts subsequently made in the name of the firm. *Edwards* v. *McFall*, 5 La. Ann. 167; *Maxlett* v. *Jackman*, 3 Allen 287; 3 Kent's Com. 68; *Goode* v· *Harrison*, 5 B. & Ad. 147.

The principles upon which this responsibility is cast upon the retiring partner, are founded upon obvious considerations of justice and public policy. Where one of two innocent parties must suffer from giving a credit, he should suffer whose negligence has misled the other. Story on Partnership § 160; Collyer on Partnership § 530; *Benton* v. *Chamberlin*, 23 Vt. 713; *Farrar* v. *Deflinne*, 1 Carrington & Kirwan 580; *Edwards* v. *McFall*, before cited; 3 Kent's Com. *66.

As to the world in general, such notice need not be actual; it may be constructive and may implied from circumstances. It must be such as a jury would deem reasonable; and probably a publication of the dissolution in a local newspaper would generally be deemed sufficient. But as to persons who have been in the habit of dealing with the firm, it is requisite that *actual* notice be brought home to them, or at least that the credit was given under circumstances from which actual notice might be inferred: Collyer on Partnership, § 533; Chamberlain's Commercial Law, 215, 216; *Zollar* v. *Janvrin*, 47 N. H. 327; 3 Kents Com. *67.

In the present case, it is not pretended that any public notice of Mrs. Flanders' retirement was ever given. The business continued to be conducted in the same place and under the same style, either with her express knowledge and consent, or by her negligence : it is immaterial which.

But, as we have seen, a general notice by publication unless brought home to the *actual* knowledge of these plaintiffs, would not preclude their demand in this suit, if they had been accustomed to have dealings with the firm of which the retiring member had been an ostensible partner; and the jury have found that at the time of the sale of the goods in this case the plaintiffs had *no* knowledge of the dissolution of the defendants firm.

But the defendant says that by the withdrawal of Locke from the firm, on the 1st of July, the old partnership of Deering, Miliken & Co., composed of six persons, including Locke, was dissolved, that a new partnership and a new firm was thereby created, which, although composed of the five remaining members was in fact a new creation and a new concern, as much independent of the old firm as if it had been created by an associotion of entirely different people, in a difference business, negotiating at another place and under another style and designation—and therefore, *her firm*, having been dissolved before the creation of this new firm, the two firms never had any dealings with each other. Consequently, she says, it was not requisite for her protection, that she should give special notice to the newly consti-

tuted firm of Deering, Milliken & Co., of her own retirement from the firm of Fletcher & Co.

It is a sufficient answer, to this proposition to repeat the observation that an *ostensible* partner, retiring from a firm, cannot protect herself from liability on account of subsequent contracts made with the apparently continuing firm with which he had been connected, by parties with whom the firm may have had *no dealings*, unless reasonable, *public* notice of the dissolution have been given.

But we do not regard the change which took place in the plaintiff's firm on the 1st of July, as being of that character which would excuse the defendant from giving *actual* notice to the firm of Deering, Milliken & Co., as constituted prior thereto, in order to exonerate herself from liability in this case.

We think that the firm, composed of these five plaintiffs must be regarded as substantially, and for all practical purposes, *the same firm* with which the defendant's firm previously had dealings. There was no such change in the plaintiff's firm on the 1st of July, as would seem to affect the relations of the firm with its customers or the public. It was a change important only to themselves; or at any rate, not important to the *debtors* of the firm, however it may have been with regard to its creditors.

There was no external change in the business affairs of the plaintiffs.

As to the world, and as to everybody except creditors, dealings with the association, it was as much the same firm before and after the 1st of July, as a corporation, one of whose six or seven directors may have died or resigned, is the same corporation.

Any considerable change in the constituency of the firm, or in its style and designation, or the character of its business or its location might present a very different case and different considerations; but these plaintiffs manifested no outward change in their commercial relations or situation. The remaining five continued to do business of the same character as formerly, at the same place, by the same style of firm, with the same old customers; and, like the defendant's firm, having given no public notice of the retirement of one of their number, (who, like Mrs. Flanders, must be regarded as an ostensible partner), not only the present plaintiffs, but Locke also continued to be responsible to all persons who had given or who might give credit to the firm on account of Locke's connection with it.

*Judgment on the verdict.*